UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CASSANDRA GESKE and TILMAN COLBERT
JONES, individually and on behalf of all
others similarly situated,

Plaintiffs,

v.

AMERICAN WAGERING, INC., d/b/a
William Hill and Caesars Sportsbook,

Defendant.

No. 23 C 1665

Judge Thomas M. Durkin

MEMORANDUM OPINION AND ORDER

Cassandra Geske and Tilman Colbert Jones bring fraud and misrepresentation claims regarding Defendant's online sports gambling service. The Court previously denied Defendant's motion to compel arbitration. R. 44 (*Geske v. Am. Wagering, Inc.*, 2024 WL 415719 (N.D. Ill. Feb. 5, 2024)). Defendant now renews that motion, which the Court grants.

In denying Defendant's first motion to compel arbitration, the Court found that because Defendant failed to include the terms of service containing the arbitration clause "in a scroll box or hyperlinked, [with] a box or button demonstrating assent to a statement of agreement to those terms, it [was not] reasonable to find that the user read and understood the terms because they [were not] immediately present or directly linked on the equivalent of another page." *Geske*, 2024 WL 415719, at *2. On this renewed motion, Defendant contends that additional investigation has shown that, contrary to the evidence presented to the Court on the first motion, at the time

Plaintiffs created their accounts, a hyperlink to the terms of service and a check box indicating agreement *was* present on the account creation page. *See* R. 86. Defendant explains that the first motion was filed during a period of time when the link and check box had been inadvertently removed from Defendant's website. *See id.* Defendant argues that because its investigation shows that Plaintiffs were presented with a link to the terms of service and checkbox indicating agreement to the terms of service when they created their accounts, they should be compelled to arbitrate their claims in accordance with the arbitration clause included in the terms of service.

Plaintiffs do not dispute the facts resulting from Defendant's further investigation. Plaintiffs also do not dispute that the terms of service include an arbitration clause that would require arbitration of their claims if they agreed to the terms when they created their accounts.

Plaintiffs' primary opposition to Defendant's renewed motion to compel is that Defendant waived the right to arbitration by not conducting a more thorough investigation of the relevant facts prior to the first motion to compel. Waiver requires that the defendant "acted inconsistently with the right to arbitrate." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). And Plaintiffs argue that Defendant "has shown a reckless indifference to its right to arbitrate" by not conducting a more timely and thorough investigation. *See* R. 90 at 10. The Court disagrees and finds that Defendant's failure is at worst negligent. Defendant did nothing to hide or ignore the relevant facts. Rather, according to Defendant, they simply made a mistake, both in maintaining their

website in general, and investigating that information for this case specifically. Moreover, Plaintiffs were aware of the factual circumstances of their account creation. In other words, the evidence Defendant has discovered shows that Plaintiffs saw the hyperlink and clicked the agreement checkbox. To the extent Plaintiffs forgot that they took these actions, Defendant's mistake is no worse than Plaintiffs'. Defendant certainly invoked their right to arbitration and put Plaintiffs on notice of that intent when they filed the first motion. Defendant's incomplete investigation of the facts prior to filing the first motion is not a reason to find waiver here.

In support of waiver, Plaintiffs renew an argument they first made during a hearing where they opposed granting leave to Defendant to file this second motion to compel arbitration. At that hearing, Plaintiffs argued that the Seventh Circuit prohibited renewed motions to compel arbitration in *Wallrich v. Samsung Electronics Am., Inc.*, 106 F.4th 609, 619 (7th Cir. 2024). But as the Court already explained at the hearing, *Wallrich* does not stand for the proposition that renewed motions to compel arbitration are disallowed. Rather, *Wallrich* simply holds that *remand* for discovery of additional evidence relevant to a motion to compel arbitration *after appeal* is not warranted. *Wallrich's* holding about when remand is appropriate is not relevant to whether a first motion to compel arbitration constitutes a waiver to a second motion after a more complete factual investigation. And contrary to Plaintiffs' argument, the Supreme Court has emphasized that the Federal Arbitration Act "leaves no place for the exercise of discretion by a district court," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985), but instead requires that district

courts "rigorously enforce arbitration agreements according to their terms," *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). The Court finds that this rule permits Defendant's second motion here based on a more thorough investigation of the relevant facts.

Moving beyond their waiver argument, Plaintiffs also argue that the new facts revealed by Defendant's investigation do not demonstrate that Plaintiffs agreed to arbitrate. They argue that "instead of making its terms clear and conspicuous, [Defendant] deliberately hid its [terms of service] and arbitration agreement from Plaintiffs and other consumers" by:

> (1) intentionally removing its checkbox mechanism for assent from its registration flows in January 2023, enabling users to quickly complete sign-up without ever noticing the [Terms of Service];
>
> (2) burying those terms via inconspicuous hyperlinks users were not required to click on or review in order to register;
>
> (3) obscuring what terms users were actually agreeing to by confusingly interchanging their titles and linking the TOS to a differently-named "Terms and Conditions" document;
>
> (4) sending post-registration emails that did not disclose Caesars' TOS and arbitration agreement and submerged the only relevant hyperlink (to the misnomer "Terms and Conditions") at the very bottom banner of the emails.

R. 90 at 14.

Regarding the first argument, the fact that Defendant removed the hyperlink and checkbox on the sign-up page after Plaintiffs created their accounts is not relevant to whether Plaintiffs agreed to the arbitration provision. Plaintiffs argue

that the removal "confirms that for [Defendant], its end goal was not to place consumers on notice of arbitration, but rather, to get them to blindly agree to the terms as fast as possible." R. 90 at 15. Whether or not this is a reasonable inference, Defendant's subsequent intentions are not relevant to whether Plaintiffs agreed to arbitration at the time they created their accounts when the hyperlink and checkbox were presented to them on the account creation page.

Plaintiffs next argue that Defendant's hyperlinks "are not sufficiently conspicuous" because the fact that the "hyperlinks are denoted in green text is insufficient to salvage the overwhelming inconspicuous [nature] created by its tiny font size . . . the buried placement, and the lack of underscoring." R. 90 at 16. The Court disagrees with this characterization. The text of the hyperlink to the terms of service is no smaller than the rest of the text, *see* R. 86 at 3, and the green color provides sufficient emphasis despite the lack of underscoring. Most important, however, the account creation page requires the user to click a checkbox next to the text "I agree to the Terms of Service." As the Court discussed in its prior opinion, courts generally find that the requirement to click a checkbox is sufficient to find that a user demonstrated assent to terms and conditions linked next to the checkbox. *See Geske*, 2024 WL 415719, at *1 (N.D. Ill. Feb. 5, 2024) ("A hyperlink, or a scroll box containing the agreement, placed next to an 'I Accept' button that unambiguously pertains to that agreement, are the most common ways of providing reasonable notice in an online contract." (citing *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016))). Plaintiffs do not cite any authority to contrary. This is likely because it

is difficult to believe that a person clicking a checkbox next to the phrase "I agree to the Terms of Service" would not understand that by clicking the box they were agreeing to whatever terms were provided on the linked page.

Plaintiffs' third argument is that the link for "terms of service" actually links to a page titled "terms and conditions," and thereby "obfuscated what exactly consumers were assenting to." R. 90 at 16. Defendants do not dispute that the "terms of service" link led to a page titled "terms and conditions." But they point out that the "terms of service" are part of the "terms and conditions," and the "terms of service" were available to be viewed on the page titled "terms and conditions," either by scrolling down or choosing to view the "terms of service" from a drop-down menu. *See* R. 86 6-7 (¶ 25), 14, 21; R. 87-1 at 154:19-156:23. Despite the "terms of service" not being at the very top of the webpage in question, the "terms of service" were available on that page, such that Plaintiffs were provided with "reasonable notice" of the terms of the agreement with Defendants. *See Sgouros*, 817 F.3d at 1034-35 (explaining that court should "ask whether the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement, and whether the circumstances support the assumption that the purchaser receives reasonable notice of those terms"). For that reason, the Court finds that Plaintiffs agreed to the arbitration clause contained in the "terms of service."

Lastly, Plaintiffs argue that the "post-registration emails" Defendant sent did not clearly disclose the terms of service. Plaintiffs make this argument in one sentence and do not explain why a follow-up confirmation email is relevant to

whether the account creation page adequately provided Plaintiffs notice of their agreement with Defendants. This is not a reason to deny Defendant's motion.

**Conclusion**

Therefore, Defendant's motion to compel arbitration [84] is granted, and the case is stayed pending completion of the arbitration process.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: September 3, 2025